### L. P. LARSON, JR., CO. v. LAMONT, CORLISS & CO. et al.

### SAME v. MINT PRODUCTS CO.

(Circuit Court of Appeals, Seventh Circuit. July 30, 1918. Rehearing Denied January 15, 1919.)

### No. 2476.

1. TRADE-MARKS AND TRADE-NAMES ⬥45—REGISTRATION—EFFECT—SUBSEQUENT REGISTRATION.

Where a trade-mark for a gum wrapper, consisting of an exhibited design containing the words "Peptomint" and "Gum," was registered with an explicit disclaimer of the words "Peptomint" and "Gum," the statutory right respecting "Peptomint" as one of the elements of the trade-mark was exhausted, the trade-mark statute containing no provision for reissue or amendment after issue, and the registrant could not thereafter, by subsequent registration, acquire any right respecting the word "Peptomint."

2. TRADE-MARKS AND TRADE-NAMES ⬥45—UNFAIR COMPETITION—COMMON-LAW RIGHTS.

Where a gum manufacturer's label was marked with the word "Peptomint" wreathed with sprigs of peppermint, and the quoted word was popularly taken as corrupt spelling of peppermint, and so pronounced, the manufacturer, in attempting to assert a common-law right to the

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

quoted word as an independent trade-mark, could not, after disclaimer of such word in the registration of his trade-mark, claim that such word was arbitrarily coined from "peptone."

3. TRADE-MARKS AND TRADE-NAMES ⟠93(3)—UNFAIR COMPETITION—EVI-
DENCE.

In an action based on unfair competition by a manufacturer in using the word "Peptomint" to simulate both in color and design the word "Pep-O-Mint" on plaintiff's candy labels, evidence *held* to require a decree for plaintiff.

4. TRADE-MARKS AND TRADE-NAMES ⟠93(1)—UNFAIR COMPETITION—REGIS-
TERED TRADE-MARKS—PRESUMPTIONS.

In an action for unfair competition in the use of the word "Peptomint" to simulate plaintiff's word "Pep-O-Mint," that plaintiff's label bore the words "trade-mark registered," while the word "Pep-O-Mint" had not been registered, did not require a dismissal of plaintiff's bill, where such words were attributable to a legend on plaintiff's products that actually had been registered, and in view of the presumption that a suitor's hands are clean.

Consolidated Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the L. P. Larson, Jr., Company against Lamont, Corliss & Co. and others, and action by the Mint Products Company against the L. P. Larson, Jr., Company, with cross-bill by defendant against plaintiff in the last-mentioned action. From a dismissal of plaintiff L. P. Larson, Jr., Company's bill and cross-bill, it appeals; the appeals being consolidated. Modified and affirmed.

Frank F. Reed and Charles H. Aldrich, both of Chicago, Ill., for appellant.

James R. Offield and Charles K. Offield, both of Chicago, Ill., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. For alleged infringement of trade-mark and for alleged unfair competition appellant sued Lamont, Corliss & Co., selling agents of Mint Products Company. That company reciprocated with a like suit against appellant. In addition to taking issue by answer, appellant in a cross-bill again asserted that it was the aggrieved party. On final hearing appellant's bill against Lamont, Corliss & Co. and its cross-bill against Mint Products Company were dismissed for want of equity. With respect to Mint Products Company's bill a decree was entered that Mint Products Company was the exclusive owner of the trade-mark or name "Pep-O-Mint" and also of the word collocation and descriptive appearance of the wrapper inclosing its mint lozenges; that appellant had infringed said trade-mark or name and also had simulated said wrapper; and that appellant be enjoined—

"from engaging in unfair competition with Mint Products Company, and from putting up or selling mint lozenges under the trade name or mark 'Pep-O-Mint,' or any simulation thereof as to style of lettering or letter arrangement and design, or so wrapped in labels or contained in cartons that may be mistaken for the goods of Mint Products Company."

---

⟠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In 1912, appellant, after a year's business in chewing gum, registered the following trade-mark:

Appellant's verified statement alleged that the trade-mark consisted of the exhibited design and explicitly disclaimed the words "Peptomint" and "Gum."

In 1915 appellant filed a second application and thereupon procured the registration of the following trade-mark:

Appellant's verified statement alleged that the trade-mark consisted of the exhibited design and explicitly disclaimed the word "Gum." Inferentially appellant sought to assert a trade-mark right in the word "Peptomint" by saying:

"No claim is made to the word 'Mint' except in association with the word 'Pepto.'"

Appellees in 1913 began to make and sell candy lozenges, of various flavors, under the trade-mark "Life-Savers." Their lozenges were somewhat of the form of a life-buoy and were done up in cylindrical packages. Flavors were prominently marked by a peculiar style of printing, displayed along one side of the cylinders, "Pep-O-Mint," "Choc-O-Late," "Wint-O-Green," "Malt-O-Milk," "Cl-O-Ve," "Lic-O-Rice." Letters, white on a purple background, were graduated in size, the largest at the ends, the others diminishing toward the round O at the center.

In 1914 appellant notified appellees that they were infringing the trade-mark "Peptomint" by the use of "Pep-O-Mint" on their peppermint-flavored "Life-Savers." This was the first that appellees knew of appellant's claim of "Peptomint" as a trade-mark. Appellant began its suit in 1916 and counted upon the 1915 registration.

[1] In the trade-mark statute, as in the one respecting copyright, there is no provision for re-issue or amendments after issue. Consequently the 1912 registration exhausted the statutory right respecting "Peptomint" as one of the elements of the described mark. Caliga v. Inter Ocean Newspaper Co., 215 U. S. 182, 30 Sup. Ct. 38, 54 L. Ed. 150. And so appellant must be held to its disclaimer.

[2] With respect to an asserted common-law right in the word "Peptomint" as an independent trade-mark, the record shows that appellant's gum was marketed in packages bearing the 1915 design in red, green and white. In so far as the word "Peptomint" was used alone, the use was oral; and appellant's own witnesses show that the printed word was popularly taken as a corrupt spelling of peppermint and was so pronounced. As the name of the flavor of appellant's gum, the word can have no standing as a common law trade-mark. And in view of the 1912 disclaimer, the common pronunciation of the word, and appellant's wreathing it with sprigs of peppermint, equity will not hear appellant now say that the word was arbitrarily coined from "peptone," a digestive aid. At all events appellant can reach the question of infringe-

ment only through the common pronunciation of the two words as peppermint. Appellees make no allusion to "peptone." All agree that "Pep-O-Mint" is peppermint.

Concerning unfair competition, appellees in marketing their candy lozenges did not in any way imitate appellant's gum labels and packages and did not attempt to palm off their goods as appellant's. They did not in any way molest appellant in its fair-trade rights, for appellant cannot be allowed trade rights in any form that would prevent appellees from marking the various flavors on their packages of "Life-Savers" as they did.

[3] In Mint Products Company case, we find that appellant has been guilty of unfair competition. In March, 1915, appellant went into the candy lozenge business. It put out peppermint lozenges in packages with red, green and white labels, which were practically identical with its "Peptomint" gum label except that the word "gum" was omitted. Of this label there was no complaint. But in December, 1915, appellant made a change. On its new label the word "Peptomint" is shown in white letters on a purple background, with the letters graduated in size to simulate "Pep-O-Mint" of Mint Products Company's label, and with the letter O elongated horizontally to give a spaced appearance. As this was after appellant had begun its warfare, the inferences are obvious. But, appellant says, no damage was done, no cause of action arose, because the record fails to show that a secondary meaning had attached to "Pep-O-Mint," indicating origin in Mint Products Company. When these candy lozenges are displayed in cartons the part having the name of the flavor is on top, so that the customer and the seller may readily pick out the flavor desired. From the evidence respecting the large amount of long continued advertising, the character of the advertising, and the volume and extent of the business, we have no difficulty in finding that the peculiar and distinctive style of marking the flavors, "Pep-O-Mint," "Wint-O-Green," and so forth, had come to indicate to purchasers that they were getting the goods put forth by Mint Products Company. If further proof were needed, it is found in appellant's deliberate appropriation.

[4] Appellant contends that the case against it must be dismissed because Mint Products Company's label bore the words "Trade-mark registered," while the record shows that "Pep-O-Mint," on which trade-mark infringement was based, had never been registered. There are two answers: First. Though a certified copy of registration was not produced, testimony was given to the effect that "Life-Savers" was a patented (registered) trade-mark. If so, the criticized legend should be attributed, as it may well be from its position on the label, to the trade-mark "Life-Savers." Second. The presumption that a suitor's hands are clean, continues until some one—the suitor himself, his adversary, or the court—shows that they are unclean.

But the decree against appellant is too broad. Mint Products Company can be allowed no exclusive ownership of the word "Pep-O-Mint" as a trade-mark. It was used to indicate the flavor of one of several kinds of "Life-Savers." What was owned was the distinctive style of wrappers and cartons, including the particular way in which the word

257 F.—18

"Pep-O-Mint" was displayed. Further, the injunction and accounting must be limited to the proven violation, namely, the use of the label (with its accompanying cartons) put forth by appellant in December, 1915, identified as Exhibit C of the bill. Also, the general prohibition "from engaging in unfair competition with Mint Products Company" is to be deleted. To refrain from unfair competition is appellant's legal duty; but appellant should not be subjected to the possibility of contempt proceedings for undefined breaches of that duty. Swift v. United States, 196 U. S. 375, 396, 402, 25 Sup. Ct. 276, 49 L. Ed. 518.

Decree modified and affirmed.