## ELI LILLY & CO. v. WILLIAM R. WARNER & CO.

(District Court, E. D. Pennsylvania. September 29, 1920.)

### No. 1355.

1. **Property ⬤⟜2—Person honestly acquiring formula using common materials may reproduce it.**

   The first user of a formula for medicine composed of common materials and which is not patented acquires no monopoly therein; but any one acquiring knowledge of the formula without any breach of trust or good faith can reproduce it and market it, with the representation that it is the same as the original.

2. **Trade-marks and trade-names ⬤⟜17—Right to cocoa as coloring and flavoring matter cannot be monopolized.**

   The right to use cocoa in connection with quinine and yerba santa cannot be monopolized, on the claim that the use of the cocoa is merely to give a distinctive color, since it also has a distinctive flavor, attractive to the public, which cannot be given by any other means, and the right to such flavor is not one which can be exclusively claimed.

3. **Trade-marks and trade-names ⬤⟜3 (4)—"Coco-Quinine" is a descriptive name.**

   The name "Coco-Quinine," applied to a liquid preparation of quinine, in which the bitterness of the quinine is disguised by yerba santa and cocoa added to give a distinctive color and flavor, is a mere descriptive name, which cannot be an exclusive trade-mark.

4. **Trade-marks and trade-names ⬤⟜93 (3)—Evidence held not to show unfair selling methods.**

   Evidence that dealers inferred from statements by defendant's salesmen that they were to substitute defendant's preparation for plaintiff's when it was called for, with denials by the salesmen that they made such representations, and without evidence that any officer or sales manager of defendant had authorized such representations, *held* insufficient to show unfair selling methods by defendant.

5. **Trade-marks and trade-names ⬤⟜93 (3)—Testimony of unfair sales should be direct and positive.**

   Testimony of unfair sales by defendant, for the purpose of substituting their product for that of plaintiff, when the latter was called for, should be established by direct, clear, and positive testimony.

In Equity. Suit by Eli Lilly & Co. against William R. Warner & Co. to restrain unfair competition. Bill dismissed.

E. W. Bradford, of Washington, D. C., for plaintiff.

Francis Rawle and Joseph Henderson, both of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The plaintiff is a corporation engaged, at Indianapolis, Ind., in the manufacture and sale of pharmaceutical and chemical products. It employs a large staff of traveling sales agents in selling its product to druggists and physicians throughout the United States. In 1899 it commenced the manufacture and sale of a liquid preparation known as "Coco-Quinine." It contains quinine as its therapeutic agent, and is designed for the administration of quinine sulphate in cases where the liquid form is preferred to capsules or pills. Yerba santa is used in the compound to disguise

the bitterness of the quinine, and chocolate syrup is used for a coloring and flavoring medium. The formula is not patented, and the preparation is not the subject of a registered trade-mark. It is put up in bottles with a label, with the word "Lilly" in red script on a green background. The plaintiff, through its sales agents, was successful in introducing it and establishing extensive sale for it among pharmacists and dispensing physicians; that is, those who do not prescribe for their patients, but supply medicine from their own stock. The sales by druggists were upon physicians' prescriptions and to customers who inquired for chocolate-quinine or Coco-Quinine.

The defendant is a Pennsylvania corporation, organized in 1908 to take over the long-established business of William R. Warner & Co., pharmaceutical and chemical manufacturers, and is chiefly owned and managed by Mr. Henry Pfeiffer, Mr. Gustavus A. Pfeiffer, and Mr. G. D. Merner, through holdings of its stock, and they are also the owners of the Pfeiffer Chemical Company and Searle & Hereth Company. For the purposes of this suit, the united control and the close union in business of these three companies is not disputed.

In 1906 the Pfeiffer Chemical Company put upon the market a product known as "Quin-Coco." This product is practically identical with the plaintiff's Coco-Quinine. It consists of quinine with yerba santa, vanillin, saccharin, and cocoa, with a syrup base. Since the organization of the defendant company in 1908 Quin-Coco has been manufactured by the Searle & Hereth Company and distributed solely by the defendant, the Warner Company.

The defendant has since its organization, through its sales agents, distributed and sold Quin-Coco as a substitute for Coco-Quinine. It has not attempted to sell it as Coco-Quinine, but has offered it and solicited orders for it from druggists as a substitute for Coco-Quinine and identical to it in therapeutic value. It is not established, nor is it claimed, that it is known to consumers as a product of Eli Lilly & Co. The use of chocolate to disguise quinine in tablet and lozenge form, and the use of yerba santa in the compound to disguise the bitterness of the quinine, was not new when the plaintiff made its preparation in liquid form, nor was the plaintiff the first discoverer of the use of chocolate for disguising quinine in liquid form. First in tablets or lozenges, and later in liquid form, the combination was known long prior to the manufacture of the plaintiff's preparation.

The plaintiff's bill is based upon the ground that it originated the product, and distinguished and identified it as its product, by the color and flavor of chocolate, which is not essential to its therapeutic value; the chocolate being used for the sole purpose of making the remedy known by color and taste. It claims that chocolate is but one of many ingredients which could be used for this purpose, but by no means the sole medium. It claims that Coco-Quinine was the first successful preparation commercially known to physicians and druggists; that by legitimate business methods the plaintiff made it a distinctive and desired product throughout the United States, and won for it a high reputation with physicians, druggists, and the public in general; that into the market created by the plaintiff at great expense and effort

the defendant introduced Quin-Coco, by selling in that market a counterfeit of Coco-Quinine under a name resembling that used by the plaintiff for its genuine article; that the defendant's product was sold as a substitute for plaintiff's by unfair and dishonest means, supplying the counterfeit where the genuine was desired and called for, with the result that in numerous instances druggists filled prescriptions calling for Coco-Quinine with Quin-Coco, and sold Quin-Coco when they knew Coco-Quinine was desired. It is claimed that by these alleged deceptive and dishonest means the defendant acquired trade which had been built up by the efforts and at the expense of the plaintiff.

The plaintiff seeks an injunction restraining the defendant from the further manufacture and sale of a liquid preparation in the administration of quinine, or quinine in liquid form, colored or flavored with cocoa. It further seeks an injunction restraining the defendant from the use of the name "Quin-Coco" as a name designating such product, on the ground that it is a mere reversal of the words comprising the name long used by the plaintiff for designating its product "Coco-Quinine."

The effect of issuing an injunction would be to grant the plaintiff a monopoly, perpetual in effect, of the right to manufacture and sell a liquid preparation containing quinine, with its bitterness disguised by the use of yerba santa, or some similar agent, if any exist, in combination with cocoa, which is chocolate less its fatty components, and which gives the preparation a distinctive color and flavor. The defendant contends that it can lawfully make and sell a substitute for any medicinal preparation, provided it does not do anything which would constitute "passing off" its product for that of another. The plaintiff, while conceding that it has no exclusive right to the formula unless patented, and conceding further that it has no trade-mark, and that the defendant has not attempted to simulate the label upon its package, contends that because of the circumstance that, after its formula for a liquid preparation of quinine and yerba santa was satisfactorily worked out, it adopted the use of chocolate, so as to give the preparation a distinctive color and flavor, which would identify it as the plaintiff's product, the public was, through unfair means, deceived through the defendant's imitation containing the same color and flavor.

The plaintiff cites the case of Coca-Cola Co. v. Gay-Ola Co., 200 Fed. 720, 119 C. C. A. 164, and the authorities on which that decision is based, to sustain its position that the defendant may not use chocolate or cocoa for coloring the product because the plaintiff has used it to give its product a distinctive color and flavor. This contention, if the facts were such as to show acts on the part of the defendant to induce dealers to deceive the consumer into believing that it was getting the plaintiff's product, would have support in the Gay-Ola Case, if the function of the chocolate were merely to give a distinctive color. The Gay-Ola product was colored by the use of caramel, and as stated by the court:

"There is here no claim that caramel serves any other purpose in either compound, except merely to give color, and saying that it is one of the 'component elements,' as one of the witnesses does, is saying nothing more. It follows that the adoption, not only of caramel, but of the selected amount of caramel, was for the main and primary purpose of making the two articles look just alike. In this connection it appears that there is a great variety of coloring materials open to the use of any manufacturer, and selections from which are used by other manufacturers."

The plaintiff, however, must go further than debarring the defendant from the use of chocolate as coloring matter. It is alleged in the bill, and proved in the case, and is a matter of common knowledge, which perhaps requires no proof, that the flavor of chocolate is obtainable from no other substance. The plaintiff must therefore debar the defendant, not only from the use of the color, but from the use of the flavor of chocolate. In support of this proposition, the plaintiff has not cited any authorities, and I think the obvious reason is that there are none, to the effect that flavors, and particularly such a distinctive flavor as chocolate, may, because adopted by the plaintiff, be monopolized. While the plaintiff has shown that other liquid preparations of quinine, with the bitterness disguised and flavor added, may be made, it has not shown that the chocolate flavor may be obtained by any other means than by the use of chocolate, or that chocolate flavor may be used without producing the chocolate color in the liquid. While the distinctive flavor of chocolate is a matter of common knowledge, it is equally a matter of common knowledge that it is a flavor which appeals to the palate and taste of people almost universally.

[1] The plaintiff is confronted at first with this proposition: That it has no exclusive right to the use of its formula. Its only right is to prevent any one from obtaining or using it through a breach of trust or contract, and any one .that came honestly to the knowledge of it could use it without the plaintiff's permission and against its will. Chadwick v. Covell, 151 Mass. 190, 23 N. E. 1068, 6 L. R. A. 839, 21 Am. St. Rep. 442. .The ingredients of which its product was composed are of such common everyday use that the plaintiff cannot be held to have the right to prevent others from using the same combination as used by it, and the preparation may be used and manufactured by any one who in good faith acquires knowledge of its composition, and such person may publish the fact that he has made it in accordance with the original formula. Hostetter v. Fries (C. C.) 17 Fed. 620.

[2] Upon the right of the plaintiff to appropriate, through its appropriation of the color, the flavor of chocolate, the case of Wrigley & Co. v. Grove Co., 183 Fed. 99, 105 C. C. A. 391, is in point. The court said in that case:

"The right to make and sell chewing gum out of ingredients not deleterious to health, and to flavor it with wintergreen, vanilla, strawberry, pineapple, spearmint, or any other flavoring material, is inherent in every citizen, whether a corporation or an individual. Having a right to make and sell gum, it follows, as a necessary corollary, that he has the right to describe it. The flavor is a very important factor, regarding which the public desires to be informed, and which the seller has a clear right to communicate, if, indeed,

he is not under obligation to do so. If his gum be flavored with spearmint, for instance, he cannot inform the public of this without using the word 'Spearmint,' and to deprive him of that privilege is to interfere with his rights. 'Spearmint' is a descriptive term as applied to chewing gum, and no one can deprive a manufacturer of its use or appropriate it as a trade-mark."

While that case was upon the question of the right to appropriate the word "Spearmint" as a trade-mark, it being the name of a well-known flavor, the denial of the right is based upon the right of any manufacturer to flavor his product with whatever flavoring material he desires. To the same effect is Larson, Jr., Co. v. Lamont, Corliss & Co., 257 Fed. 270, 168 C. C. A. 354, where the question was the right to the exclusive use of the word "Pep-O-Mint," which was denied upon the ground that it was the mere indication of a flavor, the use of which was open to the public generally. It follows, therefore, that the right of the defendant to use chocolate flavor carries with it a right to use that color, unless it should appear, which it does not, that the flavor could be used without the color.

The effect of the plaintiff's contention would be that the consumer who asks for chocolate quinine, cocoa and quinine, or quinine flavored with cocoa or chocolate, cannot have his remedy with the desired flavor, unless he purchases the plaintiff's Coco-Quinine, because one of the incidents of the flavor is that it carries with it a color in which the plaintiff has a monopoly to indicate the derivation of its product. If, conceding that the chocolate has no therapeutic value, although it is contended by the defendant that it has a peculiar value as a physical mixer for the quinine, there can be no exclusive use of the flavor, it follows that the plaintiff cannot acquire an exclusive use of it because of the incident of color under the claim that that marks the derivation of its product.

[3] We come now to the right of the defendant to use the name "Quin-Coco," as affected by its similarity to that of the plaintiff's product "Coco-Quinine." It is too well settled to require citation of authorities that a mere descriptive name cannot be monopolized. What the plaintiff has for sale is a mixture of quinine and chocolate or cocoa, and the name discloses that fact. It does nothing more. It is not an arbitrary name, disclosing the derivation of the product from the plaintiff, and the defendant, therefore, has the right to use a combination indicating the same facts in relation to its product by use of the name "Quin-Coco." The combination of quinine and chocolate was known in the books and catalogues under various names containing the same significance for years before the plaintiff adopted its name, and there is proof in the case of a number of products bearing names indicating the use of the same materials in pharmaceutical preparations for the past 10 years.

[4] The plaintiff does not contend, and there is no evidence to show, any direct "passing off" of the defendant's product for that of the plaintiff. The plaintiff contends that the evidence shows that the defendant's agents, in selling Quin-Coco as a substitute for Coco-Quinine, used unfair selling methods, in suggesting to druggists that, because of the similarity of the products in therapeutic value and appearance, it could be passed off by the druggist to the consumer who

asked for Coco-Quinine, and could also be substituted by the druggists in prescriptions which called for Coco-Quinine, thus by suggestion inducing the druggist to pass off Quin-Coco for Coco-Quinine; and it is contended that there is sufficient evidence to establish the fact that druggists have, through these suggestions of defendant's salesmen, actually passed it off upon the public and physicians. The evidence upon this point has been carefully examined.

[5] In a charge of this nature, the testimony should be direct, clear and positive. But the testimony in most of instances consists rather of impressions of the witnesses as to what the defendant's salesmen meant than of statements of what they said. The answers of the witnesses upon the point of suggestions by defendant's salesmen of passing off were in many instances produced through objectionably leading questions. In substantially every instance in which unfair selling methods were attributed by the witnesses to the defendant's salesmen, the salesmen, upon being called, denied having made any such suggestions.

The plaintiff has failed to establish the fact that the general officers or sales managers of the defendant authorized, advised, encouraged, or suggested the alleged unfair selling methods on the part of its salesmen. That Coco-Quinine and Quin-Coco were substantially identical products; that Quin-Coco could be purchased at a saving upon the price of Coco-Quinine; that it could be placed upon the market as a substitute for Coco-Quinine—were all matters which under the law the defendant had a right to represent to its customers. In view of the fact, which I find established under the evidence, that no officer or sales manager of the defendant authorized or instructed the salesmen in unfair selling methods, in view of the unsatisfactory testimony upon which unfair selling methods of the salesmen is charged, and in view of the positive denials of any such acts on the part of the salesmen, it is concluded that the plaintiff has failed to establish its right to a decree based upon unfair selling methods.

It is held that the defendant had a lawful right to reproduce the plaintiff's preparation to tell the plaintiff's customers that it was essentially the same as the plaintiff's product in composition and therapeutic effects, and to sell it as a substitute for the plaintiff's product. Saxlehner v. Wagner, 216 U. S. 375, 30 Sup. Ct. 298, 54 L. Ed. 525; De Long Hook & Eye Co. v. Amercian Pin Co. (D. C.) 200 Fed. 66; Viavi Co. v. Vimedia Co., 245 Fed. 289, 157 C. C. A. 481; Singer Mfg. Co. v. Loog, L. R. S. Appeal Cases, 15; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118. The plaintiff has no exclusive right in the color and flavor inevitably following the use of cocoa or chocolate, which the defendant had a right to combine with quinine in a pharmaceutical preparation. The defendant had a lawful right to call its preparation "Quin-Coco," which is a descriptive name of the same effect as "Coco-Quinine." The plaintiff has not established unfair selling methods on the part of the defendant.

It follows that the bill should be dismissed, with costs to the defendant; and it is so ordered.