**KRAUSE v. COE, Com'r of Patents.**

No. 7584.

United States Court of Appeals for the District of Columbia.

Decided May 5, 1941.

Donald M. Carter, of Chicago, Ill. (Spencer B. Michael, of Washington, D. C., on the brief), for appellant.

Edwin L. Reynolds, of Washington, D. C. (W. W. Cochran, of Washington, D. C., on the brief), for appellee.

Before MILLER, VINSON, and RUTLEDGE, Associate Justices.

VINSON, Associate Justice.

Appellant brought this action, commonly known as a 4915 proceeding,[1] in the District Court, to authorize and compel the Commissioner to grant a patent. Previously, the Examiner and the Board of Appeals in the Patent Office had decided that appellant's claims were unpatentable inasmuch as they lacked invention in view of prior and patented art. The District Court likewise found appellant's claims to be unpatentable, and dismissed the complaint.

Appellant's claims are in the field of flush valves. The description and operation of the valve, while not restricted to use in connection with closet bowls, will be presented in this association to facilitate comprehension. The function of the valve is to measure accurately the amount of water for each flush in those systems which do not use a tank. It is not to be inferred that appellant is limited to the following description. It is made in order that the improvements appellant contends his device has brought about and the claims he wants patented can be more readily understood.

Picture a water main pipe joining at right angles a pipe leading to a closet bowl. At this junction, the pipe from the closet bowl is enlarged and extends above the water main pipe. This enlargement will be called the casing. Within this casing is a sliding piston valve, enlarged at both ends. In the closed position the lower end of the piston valve rests against a washer seat shutting off the flow of water from the main to the closet bowl. Above the upper end of the piston valve is a chamber of water. When the operator actuates the handle, a small valve within this main piston valve is tilted, allowing the water to flow from the chamber through the center of the piston valve into the pipe leading to the closet bowl. With this release of pressure in the chamber, the pressure of the water from the main pushes the sliding valve upwards into the chamber, the lower portion of the piston valve leaves the wash-

---

[1] R.S. § 4915, as amended, 35 U.S.C.A. § 63.

er seat, and the water flows from the main into the closet bowl causing it to flush. At the same time water goes through a by-pass within the sliding valve into the chamber, gradually pushing the piston valve back to the closed position. The water goes through the by-pass into the chamber because the enlarged upper end of the sliding valve carries a packing which seals against the casing preventing water from going around the sliding valve into the chamber. It takes the piston valve ten or twelve seconds to move into the chamber and back to the closed position. Meanwhile about four gallons of water pass from the main into the closet bowl.

If the upper end of the sliding valve with its packing does not fit tightly against the casing, water will seep by from the main into the chamber, causing the piston valve to return to its closed position sooner than it should. This means that an insufficient amount of water will go into the closet bowl for the flush, since the valve was constructed under the plan that the chamber was to be filled by way of the by-pass alone. If, on the other hand, the packing around the upper end of the sliding valve which makes the tight fit with the casing wedges and sticks, the piston valve will not return to the washer seat as soon as it should, causing a prolonged flush.

Krause states that the packings that have been used are subject to both of these difficulties. He uses a rubber or a graphite rubber packing which he contends maintains a tight fit against the casing at all times so that no water enters the chamber except through the by-pass, assuring a full flush. He also contends that the rubber or graphite rubber packing keeps its flexibility and easy running quality so that the valve never sticks, allowing too much water to enter the bowl.

Krause desires to patent seven claims numbered 1, 3, 4, 6, 7, 8, and 9. Claim 1 reads: "A flush valve comprising a casing, a main valve sliding therein, a cup packing connected with said main valve comprising a part extending crosswise of the casing and projecting beyond the main valve at its periphery and having its periphery bent so as to provide a face substantially parallel to and sliding along the inner face of the casing, said packing consisting of rubber having therein at its surface at the point where it engages the inner face of the casing powdered graphite, whereby the operation of the flush valve at low pressures is insured, the water passing through the flush valve being free from lubricating material." Claims 3, 4, and 9 are similarly set up, giving varying descriptions of the packing member. Claim 7 reads: "A cup packing device consisting of two cups of flexible rubber projecting in opposite directions from a central portion of flexible material integral with said cups." Claim 8 is identical except for the addition of a reinforcing member. Claim 6 is similarly a cup packing device of rubber and in addition specifies a 20 to 40 per cent proportion of graphite. Four claims, 1, 3, 4, and 9, then, are for a flush valve, and three, 6, 7, and 8, are for a packing member.

We consider first the patentability of the three claims for a packing member. The use of rubber or graphite rubber as a packing material appears to be old. In 1903, Traun obtained a German patent, No. 138,274, on a packing member of hard rubber with 20 to 50 per cent graphite. In 1909, Hopkinson obtained a British patent, No. 2713, on a packing member of soft rubber with graphite. In 1929, McQuaid obtained a patent, No. 1,718,474, on pump pistons with a rubber cup packing. Granting appellant's position that these packings were not shaped, supported, or otherwise constructed to be useful in flush valves, we see no invention in modifying the physical characteristics of an old packing material for the job at hand. The District Court and the Patent Office rejected claims 6, 7, and 8 on the basis of these three patents. We find no error in the District Court's conclusion.

It is also clear, in respect of claims 1, 3, 4, and 9, that Krause cannot obtain a patent on this general type of flush valve which acts as a metering device. Patents to Young, No. 1,539,455 (1925), Pasman, No. 1,600,774 (1926), and Sloan, Nos. 1,-830,005 (1931), and 1,878,001 (1932), show a flush valve working in the same manner as Krause's. Claims 1, 3, 4, and 9, however, present more than this. They disclose a flush valve with a rubber or a graphite rubber packing around the main piston valve. This is apparently new. But does this new combination constitute invention? Krause, making this his chief contention, answers in the affirmative. The District Court and the Patent Office have answered in the negative.

The only new specific thing that Krause has done is to substitute, in a flush valve, a rubber or a graphite rubber packing for

any other possible type; apparently leather has been the common packing material, although previous patents have mentioned any suitable material. Why, then, should Krause make combination claims on the whole valve? He argues that his packing was such an improvement that it made all the parts of the valve work in new and unexpected cooperation justifying the combination claims. And what is this unexpected cooperation? It is that the rubber or the graphite rubber packing makes a water tight seal so that all of the water which goes into the chamber goes by way of the by-pass assuring a long enough flush. It is also that these packings make an easy running fit so that the valve does not stick prolonging the flush. His packings, therefore, according to Krause's contentions, have made the flush valve work in a uniform time, creating an accurate meter. From an uncertain flush valve to a perfected one, all because rubber or graphite rubber was used as the packing material, is the picture painted by appellant.

██ There may have been a new and unexpected result in that Krause's device worked better than any previous valve or that it worked better than anticipated. But there was not a new and unexpected cooperation between the valve parts so that when the packing was water tight and did not stick, the valve became a consistent water meter. That is what a leather or any other kind of packing would do so long as it worked as it was intended to work. Krause did not want his valve to function in a way different from previous valves. He wanted it to function the same way— but better. Krause may have a better packing that makes a better valve, but there is no unexpected or different cooperation. To say that the Krause flush valve works better than any previous one is not to say that something has been invented. [2] Patentable invention takes more imaginative association of old and new than that. [3] Krause has smoothed and polished up the device. As a result the flush valve may be many times as feasible as before. This may be the touch needed to make flush valves reign supreme over tanks behind the closet bowl, just as the closet bowl reigns supreme over the device in which Chic Sale found so much humor, but the creative thinking, the ideas, the inventing came long ago.

Krause says that it is the last step which counts in patent law. It has to be an inventive step however. The combination claims do not disclose invention.

██ If the question before us were, do we, starting from scratch and exercising an original and independent judgment, conclude that Krause's claims show invention, we would not hesitate in answering in the negative. But that is not our appellate function. [4] And in view of that function it is clearer still that we must affirm.

Affirmed.

[2] I Walker (Deller's Ed.1937) § 29.

[3] Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, and cases cited. In that case the Supreme Court was willing to assume that the specific improvement was patentable while refusing to say that there was invention on the combination; here, as has been shown, the specific improvement is not patentable. I Walker (Deller's Ed.1937) § 47, particularly pages 217, 218.

[4] Abbot v. Coe, 71 App.D.C. 195, 109 F.2d 449.