McGRAW–HILL PUB. CO., Inc., v. AMER-
ICAN AVIATION ASSOCIATES, Inc.

No. 7615.

United States Court of Appeals for the
District of Columbia.

Dec. 16, 1940.

Chas. R. Allen, of Washington, D. C., for appellant.

Fred B. Rhodes, Cooper B. Rhodes, and Robert F. Klepinger, all of Washington, D. C., for appellees.

Before GRONER, C. J., and EDGERTON and VINSON, JJ.

VINSON, Associate Justice.

The McGraw-Hill Publishing Company filed a complaint against the American Aviation Associates and its President, Wayne W. Parrish, for trade mark infringement and unfair competition. The District Court dismissed the complaint. The plaintiff appeals.

In 1928 the Aviation Publishing Corporation secured for its periodical a registration of the trade mark, "AVIATION".[1] In 1929 the trade mark and the registration were assigned to the plaintiff. Since that time the plaintiff has published the magazine, "AVIATION". In June 1937, the defendant corporation began publishing "American a periodical under the name of Aviation".

■■ These facts outline the first issue to be considered, the charge that the defendant has infringed the plaintiff's trade mark. The law of registered and common law trade marks evolved from the broad doctrine of unfair competition. The cause of action for technical trade mark infringement, however, rests upon a precise base. The "unfair competition" in an infringement action comes merely from interfering with the trade mark itself. There is infringement if the words or designs used by the defendant are identical with, or so similar to, the plaintiff's that they are likely to cause confusion.[2]

■ In determining whether the words or designs create probable confusion, two methods may be followed. The marks themselves may be compared and contrasted; evidence may be introduced to show actual instances of confusion in the purchase of goods.

■ In following the first method, it must be remembered that the law of trade marks is for the market place. Its purpose is to protect the several manufacturers in their respective spheres of public relations and to safeguard the consumer by helping him get what he thinks he wants. The method starts, therefore, with placing oneself in the position of a purchaser. One

---

[1] The registration was made under the Act of 1905. 33 Stat. 724, 15 U.S.C.A. § 81.

[2] Thaddeus Davids Co. v. Davids Manufacturing Co., 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046, Ann.Cas.1915B, 322; S. S. Kresge Co. v. Winget Kickernick Co., 8 Cir., 96 F.2d 978, 986-988; Brooks v. Great Atlantic & Pacific Tea Co., 9 Cir., 92 F.2d 794.

should look at the plaintiff's trade mark to obtain a general impression, the impression that would be carried in the memory, and then to observe, still as a buyer, the defendant's mark to determine if it is likely to be mistaken for this "memory trade mark" of the plaintiff.

■ Under such a test we conclude that "American the defendant's title Aviation" will not, in all probability, be confused with the plaintiff's trade mark, "AVIATION". Although this conclusion is formed on the whole appearance, its expression must necessarily detail the differences. "AVIATION" as registered and as used has all letters capitalized. The defendant's title capitalizes only the first letter. The plaintiff's first "A" in "AVIATION" has a pointed top; the defendant's is flat. The defendant's title is composed of two words "American" being displayed almost as prominently as "Aviation". Apparently, the defendant has consistently employed a winged design over the first "i" in "Aviation". We agree with the trial Judge's statement, "The printed titles upon the two magazines are quite different, and sufficiently so to indicate the difference to any one wishing to buy either." The audience of both magazines, moreover, is a special one. Both magazines have followed a definite policy of confining their circulation to the people who are working and studying in the aviation field. In fact the magazines do not attempt to appeal to all the subdivisions of that trade. The great bulk of the purchasers are mail subscribers. Such an audience is even less susceptible to confusion.[3]

■ The plaintiff in addition, has followed the other, more reliable method of showing probable confusion by submitting evidence that purports to reveal disorder in the mind of the purchasing public. Upon examination this evidence proves to be spotty, and for the most part manifests the mistaking of personnel in the two publishing companies. Some of it reveals errors in addressing letters. Both types of mistakes are often made even in connection with old, well established concerns. It would be well within our everyday experience to find a person rather conversant with periodicals who forgot whether "John Jones" was associated with "The Saturday Evening Post" or with "Collier's" and whether the home office of the latter was New York or Philadelphia. A publisher though he has a registered trade mark cannot be protected from all of the inadequacies of human thought and memory. We believe that the record shows only one instance of a person who ordered the defendant's magazine while meaning to place a subscription with the plaintiff. And this was a renewal subscription by a clerk of an Embassy in a foreign country. Probable confusion cannot be shown by pointing out that at some place, at some time, someone made a false identification. The plaintiff did not show one instance of a newsstand purchaser receiving the magazine he did not intend to buy. Under both methods of determination, we conclude, without hesitation, that the defendant's title does not infringe the plaintiff's registered trade mark.[4]

■ There is an alternative ground for holding that there is no infringement. Plaintiff's trade mark "AVIATION" is not "arbitrary or fanciful", but descriptive. It is difficult to conceive of a term that would be more descriptive of the contents of the plaintiff's magazine. The plaintiff suggests that a descriptive word designates some physical characteristic. But that magazines may be described by their subject matter is too clear to be doubted.[5] The plaintiff further suggests that its magazine deals with aeronautics, more so than with aviation. It appears that the only difference the plaintiff infers is that while the term aeronautics applies to the art and science of operating all aircraft, aviation is confined to that aircraft which is heavier-than-air. To be able to find a term which is as, or even more, descriptive, does not answer the charge that the title involved is descriptive. The trial court found the term aviation to be descriptive; we would come

---

[3] Nims, Unfair Competition and Trade-Marks (3rd ed. 1929) § 324. Compare New Metropolitan Fiction, Inc., v. Dell Pub. Co., 57 App.D.C. 244, 19 F.2d 718.

[4] No infringement, Colburn v. Puritan Mills Inc., 7 Cir., 108 F.2d 377; infringement, Noll v. Rinex Laboratories,

D.C.Ohio, 25 F.Supp. 239, affirmed, 6 Cir., 99 F.2d 1013.

[5] Fawcett Publications v. Popular Mechanics Co., 3 Cir., 80 F.2d 194; Warner Publication, Inc., v. Popular Publications, 2 Cir., 87 F.2d 913.

to the same conclusion if the matter were for our independent judgment.

With this established, we turn to the Act under which plaintiff registered the title, "AVIATION". "* * * no mark which consists * * * merely in words or devices which are descriptive of the goods with which they are used * * * shall be registered * * *".[6] Hence, the registration is invalid.[7] For the same reason the title cannot become a trade mark at common law.[8] The defendant, then, has not infringed the "trade mark", for the plaintiff has no trade mark either under the statute or the common law.

■■■ Another cause of action is alleged by the complaint. It is the charge of unfair competition. Unfair competition in the trade name field is not concerned with intent or plan; it is enough if the acts of the defendant in light of the plaintiff's reputation result in an unfair benefit to the former. To constitute unfair competition in respect to a trade name, two elements must be present. The name must have acquired a secondary meaning or significance that identifies the plaintiff; the defendant must have unfairly used the name or a simulation of it against the plaintiff.

■■■ In respect to the first element, it is dubious whether it could be found that plaintiff has acquired a secondary meaning or significance for his title, "AVIATION". As is evident by the record and exhibits, and as the trial court found, other magazines have used the word, aviation, as a dominant and descriptive part of their titles. The plaintiff has not shown the degree of correlation between a trade name and his product that has formed the basis for relief in other cases.[9]

■■■ Even if the term, aviation, had acquired a secondary meaning for the plain-

tiff, the defendant has not engaged in acts of unfair competition. The plaintiff contends that the following acts are unfair: the type display of, and the color background for, the title, Aviation"; that title, and the sub-title or slogan, "The Independent Voice of American Aeronautics", in relation to "AVIATION"'s sub-title, "The Oldest American Aeronautical Magazine"; the use of a geometric design that might be described as "winged"; and Aviation"'s comments upon the suit filed by plaintiff company.

"American

That the type display of Aviation" does not copy or imitate the plaintiff's title was shown in the discussion on infringement. The complaint on the color background simmers down, apparently, to the use of a hue that contrasts with the letters of the title. Obviously, such a contrast is necessary. Further, from the several exhibits before us, it appears that the defendant has consistently used black, highlighted by white, for the beginning letter in each of the words of its title, white for the remaining letters, on a bright red background, while the several issues of the plaintiff's magazine present a variegated appearance. The sub-titles say two different things. The mere fact that the word, American, appears in plaintiff's sub-title and in defendant's title is not, as plaintiff contends, unfair. The words of the English language make many appearances, and each time they must be taken in their context. The "winged" designs, even upon a casual comparison, can be seen to be distinct, and the plaintiff has not used his regularly. We see nothing unfair in the comments published by "American Aviation" in regard to the suit.

Over against these acts alleged to be unfair, the following may be noted. The

---

[6] 33 Stat. 726, 15 U.S.C.A. § 85 (b).

[7] Collegiate World Pub. Co. v. DuPont Pub. Co., D.C.Ill., 14 F.2d 158, affirmed, 7 Cir., 25 F.2d 1018; Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 40 A.L.R. 424; Photoplay Pub. Co. v. La Verne Pub. Co., 3 Cir., 269 F. 730. Under the 1920 Act (41 Stat. 533, 15 U.S.C.A. § 121) a descriptive word can sometimes be registered. The Supreme Court has said, however, that this Act does not alter any of the substantive domestic trade mark law. Armstrong Paint & Varnish

Works v. Nu-Enamel Corp., 305 U.S. 315, 333-336, 59 S.Ct. 191, 83 L.Ed. 195.

[8] Lilly & Co. v. Warner & Co., D.C. Pa., 268 F. 156; Id., 3 Cir., 275 F. 752; Warner & Co. v. Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161; Delaware & H. Canal Co. v. Clark, 13 Wall. 311, 80 U.S. 311, 323, 20 L.Ed. 581; Nims, Unfair Competition and Trade-Marks, 3rd Ed., 1929, §§ 201, 229 (5).

[9] Wisconsin Electric Co. v. Dumore Co., 6 Cir., 35 F.2d 555; Anheuser-Busch, Inc., v. Budweiser Malt Products Corp., 2 Cir., 295 F. 306.

defendant's magazine devotes about three-fourths of its front page to news. The form can be typified by reference to a four column newspaper. The plaintiff's cover carries a picture with a statement by some advertiser. The primary emphasis in content differs. "American Aviation" stresses news. "AVIATION" devotes itself chiefly to feature articles, usually technical. The trial court found "That the two publications are not similar in cover, design, format, general appearance, or content;". Moreover, the magazines are read by a discriminating audience,[10] and an audience which appreciates that each has a needed function to perform. The defendant's advertising program has not been parasitic upon plaintiff's good-will, much less manifesting any attempt to "palm off" its wares for those of McGraw-Hill.[11] Its circulation has been built up by the distribution of free copies, by the reputation of the magazine, and by personal contact. The acts to which the plaintiff calls attention are not unfair competitive practices, and the further facts that have been pointed out suggest the complete fairness of method by which the defendant has brought its magazine to the public's attention. We are in accord with the trial court's finding that the defendant is not guilty of unfair competition.[12]

Affirmed.

---

[10] 84 A.L.R. notes 472, 486. See supra note 3.

[11] The plaintiff in its brief while arguing that there has been substantial confusion admits that, " * * * there is no known evidence that the defendant's magazine has been passed off for that of plaintiff * * * ".

[12] Not unfair competition: Standard Paint Co. v. Trinidad Asphalt Manufacturing Co., 220 U.S. 446, 460, 31 S.Ct. 456, 55 L.Ed. 536; Pulitzer Pub. Co. v. Houston Printing Co., 5 Cir., 11 F.2d 834, 836. Unfair competition: Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L. Ed. 195; Warner & Co. v. Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161; Socony-Vacuum Oil Co., Inc., v. Rosen, 6 Cir., 108 F.2d 632.