**FRICK–GALLAGHER MFG. CO. v. RO-TRAY CORPORATION et al.**

No. 7713.

United States Court of Appeals for the District of Columbia.

Aug. 4, 1941.

Roberts B. Larson, of Washington, D. C., and Robert Starr Allyn, of New York City, for appellant.

David P. Wolhaupter and Emory L. Groff, both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and EDGERTON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The suit is for infringement of a patent, of a registered trademark, and for unfair competition, including infringement of a common law trademark. The plaintiff appeals from the trial court's decree for the defendant on all counts. We think the decree should be affirmed.

I. Plaintiff owns, and alleges defendants have infringed, the Frick patent, No. 2,-

081,856.[1] The evidence may be taken to show infringement. But the trial court held the patent invalid for want of invention, and the first question relates to this ruling.

The alleged invention relates to a device for display of merchandise in hardware stores and other places. The goods ordinarily and typically shown are bolts, nuts, screws, nails, etc. The device consists of a series of separately rotating circular shelves mounted at the center upon a single standard or circular metal post. Each shelf is divided by partitions into several compartments. The partitions extend radially from the center, some being permanently constructed and acting as supports for the shelf, others being movable. The adjustability of the movable partitions permits increasing or decreasing the number of compartments as the owner's requirements dictate from time to time. At the shelf's outer edge is a removable front, which permits the use of a compartment for drawers with, it is said, great economy in space as compared with the prior art. This adjustability and economy, together with increased strength of the shelves, are the principal advantages claimed over previously existing devices. These functions and the methods used to achieve them are asserted to be inventive.

As prior art the trial court relied largely on the Revolvo construction. This was made by the Wellston Manufacturing Company of Wellston, Ohio, for which plaintiff's officers, including the inventor, Paul H. Frick, were selling agents for many years before they organized and incorporated the plaintiff. Numerous exhibits showing different forms of the Revolvo shelving were introduced. The simpler types show separately rotating circular shelves mounted upon a single standard, each shelf having a continuous welded front and being divided into compartments by permanently constructed partitions or dividers radially disposed from the central sleeve or cylinder to the welded front. Other forms include also removable dividers, a plurality of drawer sections, removable shelves with upstanding bin fronts, removable bins, and trays or shelves with the front interrupted at selected points to receive drawer sections. The permanent dividers support the shelf, whether used alone or with removable dividers and whether with continuous or interrupted front.

The trial court found that the only additions made to the Revolvo tray by the Frick patent are: (a) the removable front; (b) the peripheral flange, a device for attaching the removable front to the shelf and for strengthening it; (c) a strengthening rib or groove extending around the shelf inwardly from the outer edge; and (d) the divider locator, a slot device at the hub or sleeve of the unit for receiving and holding the inner end of the removable partition. The court found that each of these features had been anticipated.[2] Plaintiff does not question this, but asserts that by its "new combination of separately old elements" increased strength and utility of shelving was obtained which amounted to invention.

As compared with Revolvo, plaintiff says Frick presented important differences in structure and function. Frick's economy of space is achieved principally when drawers are used, although a drawer is not an element of the claims. With the Revolvo open shelf having the continuous welded front, a false bottom was necessary to get the lower drawer above the front. The space beneath is lost. Frick avoids most of this by the removable front, though some waste remains on account of the strengthening peripheral flange. Revolvo avoids it also by another shelf construction which uses a roof portion for housing the drawers. But the roof construction is not adapted for use as an open shelf when

[1] The Mueller patent, No. 2,086,508, also was alleged to be infringed in respect to claim 15, but the claim was held invalid in view of the prior art and has been disclaimed.

[2] The removable front it held to be "an old feature in the art," shown by the expired patents to Waters, No. 914,-685, and to Staples, No. 1,336,490, and taught by one form of Revolvo shelving and by a prior publication. It held the peripheral flange "a common mechanical expedient in sheet metal work for stiffening purposes," and shown in numerous patents, including Grennan, No. 1,703,-340, Knight, No. 969,959, and Dunn, No. 408,801, as well as the Revolvo continuous welded bin front. The "strengthening rib or groove" likewise was held a "common mechanical expedient for stiffening sheet metal," and shown in the patents to Grennan and Dunn. The "divider locator" was found anticipated by Bradley, No. 574,380, Donaldson, No. 727,-107, Siffert, No. 1,372,100, and Knight.

the drawers are not needed. Revolvo drawers were rectangular, making up a small cabinet. Frick's drawers are pie-cut shaped, to fit without waste into the shelf compartment. Revolvo customers could purchase open type shelves or drawer type, but if their needs changed could not shift existing shelf sections from one type to the other. Frick was readily adjustable. Frick's adjustability was achieved without loss of strength by use of the stiffening peripheral flange in place of the continuous welded front and adding the strengthening rib or groove. It was claimed too that the removable front eliminated objectionable tension of the Revolvo front and decreased the danger of lateral distortion of the Revolvo permanent dividers. Likewise it is said this danger is reduced by the divider locators.

Taking all these features and advantages together, plaintiff says that, whereas in Revolvo two types of construction were required, one for drawers, the other for open shelving only but adapted to receive drawers with objectionable loss of space, Frick made possible a single construction possessing the utility of each of the former types.

It may be accepted that Frick has made substantial improvement over any single preexisting construction in economy of space and adjustability without loss of strength. As showing that this amounted to invention, plaintiff urges: that to eliminate a part without loss of its function or advantages is "the highest trait of genius"; that Frick accomplished this by making a new combination of old elements; that previous constructions had existed for many years before Frick's improvements were made; that he discovered the need as well as the method of saving space by use of an easily removable front without loss of strength; that Frick has had a highly favorable reception in the practical art, though it is more expensive to make than Revolvo; and, finally, that the Frick patent is prima facie valid.

■ Each of these considerations may be indicative of invention. But none of them, nor all together, can be taken as conclusive, especially to overthrow findings as detailed and well considered as were those of the trial court. It is true that invention often consists in combining old features to create a new or simpler func-tion. But anticipation of the features separately or in other combinations is not irrelevant to whether the specific combination is inventive. Whether that combination is thus forecast to the mind skilled in the art must depend upon the specific circumstances. It is more apt to be foretold when the improvement is one of detail or refinement than when it is of basic function.[3]

■ The improvement here was of the former character. The primary objects were the saving and adjustability of space. Drawers were not part of the claims, but their use created the principal problems of waste in space. The problems were obvious and we think the solutions were also. Since the compartments were shaped like a cut of pie, it seems patent that the drawers should be similarly shaped for the greatest economy. Genius was hardly required to discover this. The same is true as to the saving of the space beneath the drawers. The obvious way to do this was to cut down or remove the front. If teaching of this were needed, it was shown in earlier shelving, rotating and stationary. Adjustability of open compartments by movable dividers was clearly taught by Revolvo construction. These changes, however, created problems of strengthening the shelves, since they removed some of the supports previously existing. Frick's principal devices for adding strength were the peripheral flange and the strengthening rib or groove. Adding the latter was in no sense inventive. Any mechanic familiar with sheet metal would have suggested it. The flange, in this function, was really but a lower continuous welded or attached front, forecast by Revolvo's front. The other strengthening devices, except the permanent dividers anticipated by Revolvo, appear to have been incidental in this function to others. Finally, the divider locator hardly required more than ordinary mechanical skill to devise. It is a simple metal plate fixed to the sleeve or hub of the shelf, having slots into which are slipped the inner ends of the dividers or partitions.

Taken separately or together we cannot say the trial court was wrong in finding the conception and execution of these improvements was not the work of genius. The finding that the patent to Frick was invalid, and therefore that there was no infringement, must be sustained.

---

[3] Krause v. Coe, — App.D.C. —, 120 F.2d 717, decided May 5, 1941.

II. We think the District Court also was correct in holding that plaintiff's registered trademark " 'Rotabin' " and the defendants' trademark "Ro-Tray" are not confusingly similar. The respective trademark emblems consisted of circular devices with the words " 'Rotabin' " and "Ro-Tray," respectively, printed on a light horizontal strip or area extending across the center of the mark. Both emblems used both red and black ink. But the resemblance ended with these features. " 'Rotabin' " was printed with letters of uniform size. "Ro-Tray" appeared in an entirely different style of type and in letters not uniform in height. Plaintiff's emblem contained no printing except the word " 'Rotabin.' " Defendants' emblem had printed around the borders and in the spaces immediately above and below the word "Ro-Tray" the distinctively identifying matter: "Ro-Tray Corporation, Washington, D. C., Store The Modern Way, Rotary Steel Shelving." The shape and arrangement of the colored and light areas were entirely different. The similarities of the emblems are much less striking than their differences, and the court's finding that the marks are not similar in sound or appearance was clearly right.[4]

III. It is unnecessary to review in detail the evidence relating to alleged unfair competition. The court found that the evidence failed to establish that unfair competition existed, and after an examination of the evidence we see no reason to disturb the finding. Plaintiff attempted to show that defendants used photographs of plaintiff's equipment in their advertising matter as representing their own equipment and installations. There was an effort also to show that defendant Mount violated a duty of confidence owed by him to plaintiff as its sales representative, by using in his own business a confidential list of customers given him by plaintiff for use in representing it. The evidence offered to substantiate these charges was slight, if not flimsy. The so-called customer lists were obtained from the plaintiff, but the evidence shows they were not confidential. Some of the names were merely of prospects, not customers, and others were readily available to all from public documents. The evidence might have sustained a finding that some of the photographs appearing in defendants' advertising matter were pictures or artists' reproductions of photographs of equipment which was in part plaintiff's construction. But the court found that both plaintiff and defendant "used photographs of Revolvo shelving to illustrate the *type* of shelving, and all photographs in evidence were used for that purpose." (Italics supplied.) It found also that the evidence shows "there was no palming off of plaintiff's goods by defendants" and that they violated no business or confidential relation to plaintiff. Furthermore, as the court found, there was no evidence showing that plaintiff had suffered damage by reason of defendants' manufacture and sale of rotary shelving. There was, therefore, ground for neither legal nor equitable relief.[5]

The decree is affirmed.

---

[4] McGraw-Hill Publishing Co. v. American Aviation Associates, 1940, 73 App.D. C. 131, 117 F.2d 293.

[5] McGraw-Hill Publishing Co. v. American Aviation Associates, 1940, 73 App. D.C. 131, 117 F.2d 293.