**FOX FUR CO., Inc., et al. v. FOX FUR CO., Inc., et al.**

Civ. No. 2301.

District Court, D. Maryland.

Dec. 29, 1944.

Barton, Wilmer, Bramble, Addison & Semans, Randolph Barton Jr., and Irving B. Grandberg, all of Baltimore, Md., Atwood C. Wolf, of Jersey City, N. J., Leon M. Labes, of New York City, and Ellis B. Miller, of Washington, D. C., for plaintiffs.

Frank, Skeen & Oppenheimer and Reuben Oppenheimer, all of Baltimore, Md., Maxwell A. Ostrow, of Washington, D. C., and Edward Azrael and Max Sokol, both of Baltimore, Md., for defendants.

WILLIAM C. COLEMAN, District Judge.

This is a suit for injunctive relief and damages based upon alleged unfair competition and fraudulent infringement of trade names.

The jurisdictional prerequisites as to amount involved and diversity of citizenship of the parties are satisfied. Two of the plaintiffs are New York corporations and the third plaintiff, an individual, a citizen of New York. Hereinafter, plaintiff, I. J. Fox, Inc., since it is the principal plaintiff, will, for convenience, be referred to as "the plaintiff", unless complete clarity requires otherwise. The sole defendant is Fox Fur Co., Inc., a Maryland corporation, the suit having been dismissed as against an individual Ronald Sidney Yedwal, who was originally joined as a defendant.

As a result of a hearing held pursuant to an order of this Court directing the defendants to show cause why a preliminary injunction should not issue against them pending a hearing upon the merits, the injunction was denied, and defendants having duly answered the bill of complaint, the case proceeded to a hearing on the merits.

Summarized briefly, plaintiff contends that the use by the defendant, Fox Fur Co., Inc., of the words "Fox Fur" in its corporate name and the same, as well as the words "Fox" and "Fox Furs", in advertising and selling various types of furs, has caused confusion in the public mind between the general line of furs dealt in by the plaintiff and those dealt in by the defendant, and has tended to mislead the public generally, including purchasers or prospective purchasers of furs, into supposing that the furs dealt in by the defendant are, in fact, the furs advertised and dealt in by the plaintiff; that the trade names, "I. J. Fox Inc." and "Fox Fur Co., Inc.", have, by long association with the retail fur business, acquired a special significance or secondary meaning, and that, therefore, defendant's use of the words "Fox", "Fox Fur", or "Fox Furs" infringes upon these trade names, and that this would be true even though such words be preceded by initials or proper names, or by any other words of a descriptive character. No labels used by defendant on its furs or fur garments are claimed to infringe.

Briefly stated, defendant's contention is that no one has the exclusive right to the use of a generic term such as "Fox" or "Fox Fur" as a trade name, and, further, that defendant has resorted to no methods in its advertising or sales of the furs in which it deals which have confused or tend to confuse the public as between the plaintiff's and defendant's goods, trade names, or good will.

We find the following facts: I. J. Fox, the individual plaintiff, was engaged in the retail fur business as an individual prior to the year 1918, and in 1928, one of the corporate plaintiffs, I. J. Fox, Inc., succeeded to his business and has ever since been continuously engaged in it. The store is at 393 Fifth Avenue, New York City. I. J. Fox, Inc., owns or controls other retail fur stores operating under the same name in Boston and Cleveland. It also maintains a branch store under the name of "Fox-Weis" in Philadelphia, and has had in contemplation the opening of a store in Baltimore. In addition, it con-

ducts a retail fur business in some forty-seven department stores in nine States (but not in Maryland) in the Eastern part of the country, in connection with which it bills direct the purchasers of its furs displayed in these department stores, and allows the latter commissions on such sales. The remaining plaintiff, Fox Fur Co., Inc., also a New York corporation, does not sell at retail, its business consisting solely of purchasing at wholesale for the plaintiff, I. J. Fox, Inc., and its affiliates, except the one in Philadelphia. Fox Fur Co., Inc., has never advertised or done any business of any kind in the State of Maryland.

The gross business of I. J. Fox, Inc., is very large;—for all stores approximately $77,000,000 during the years 1931–1944, inclusive; for the New York store alone in 1943, $3,000,000, and for all stores that year, $8,000,000. More than $12,000,000 has been expended by it to date in advertising its trade name and general retail business, and it is presently expending in excess of $1,250,000 a year in such advertising through radio broadcasting, newspapers, etc. It employs more than 1000 persons. However, the plaintiff has never done any fur business in Maryland nor has it ever placed any paid fur advertisement in any Baltimore newspaper or on any Baltimore radio station, and the only advertising which the plaintiff has placed in any magazine of national circulation was a series of advertisements in the year 1940, in the magazine "Esquire". The plaintiff has advertised over various radio stations outside of the City of Baltimore, but, generally speaking, the radio public of Baltimore rarely listens to any but Baltimore stations. The plaintiff has a list of some 800 persons resident in the State of Maryland, including Baltimore, who, over a period of years, have purchased or stored garments, or in some other manner dealt with it, or with one of its affiliated companies, but such transactions have taken place entirely outside the State of Maryland. This list includes persons who may have lived in New York and subsequently moved to Maryland, as well as all persons now living in the State of Maryland who have dealt in any way with the plaintiff, or any of its affiliated companies over a considerable period of years. The plaintiff has advertised extensively in New York City newspapers, some of which had, and still have circulations in Maryland, but the number of editions of these newspapers having such circulation which contain advertisements of the plaintiff is and has been quite small. All of the advertising matter of plaintiff and its affiliated companies always stresses the name and initials of the individual, I. J. Fox, and generally includes the slogan "America's Largest Furrier".

No customer of the defendant has ever actually purchased any garment from the defendant under the misapprehension that the defendant was in any way connected with plaintiff or any of its affiliates, although some few customers of the defendant have been known to ask if the defendant was connected with I. J. Fox, Inc. Two persons testified that they had dealt with I. J. Fox, Inc., outside of Maryland, and that upon seeing defendant's advertisements, thought that the defendant was connected with I. J. Fox, Inc., but neither of these persons had ever been in defendant's store, or had any business dealings with defendant.

Fifteen years after I. J. Fox, Inc., was incorporated, that is, in January, 1943, Messrs. Benjamin Dranow, Gus Getsos and Ronald Sidney Yedwal, incorporated the defendant company under the name of "Ronald Furs Incorporated", for the purpose of engaging in the general retail fur business in the City of Baltimore which they commenced at 313 North Eutaw Street, Baltimore, but moved, on or about March 1, 1943, to 106 North Howard Street, having changed the corporate name to "Fox Fur Co., Inc." It is significant that "Ronald" is the first name of the other individual, originally a defendant in the present suit. About two months prior to the incorporation of the Maryland company, Dranow and Getsos caused to be incorporated under the laws of the District of Columbia, a company known as "Fox Fur Co., Inc.", and under this corporate name engaged in a general retail fur business in Washington and advertised their business in Washington newspapers, as a result of part of which advertising, litigation arose between I. J. Fox, Inc., and Fox Fur Co., Inc., of Washington, which litigation, however, was settled without an adjudication of the questions with which we are here concerned. Dranow and Getsos had, as early as 1934, been connected with the sale of fur merchandise by the plaintiff, Fox Fur Co., Inc., which, as already

stated, does the wholesale buying for I. J. Fox, Inc., and they have recently opened retail fur stores in Wilmington, Delaware, and Paterson, New Jersey, under the same name as defendant's. Dranow, Getsos and Yedwal were all original stockholders, officers and directors of defendant company, and the first two named still are.

Defendant has never conducted but one retail store and that in the City of Baltimore. No persons with the surname Fox is now or ever has been connected with defendant's business. While it sells fur garments made out of the pelts of many kinds of animals, its sales made from the pelt of the fox on a dollar basis, is in excess of 25% of its total sales of all kinds of furs; and the average proportion of sales of fur garments made from fox pelts in Baltimore retail fur stores, as well as in retail stores generally throughout the United States, is from 3% to 5%. Defendant deals in less expensive grades of furs, generally, than does plaintiff, and its business is a great deal smaller than that of plaintiff, its gross sales for its first year being only approximately $200,000.

In defendant's various types of advertisements there is appended under defendant's corporate name the phrase "This is a local corporation and business", but in some cases, the defendant, in its advertising, has used the phrase "Foxes Fine Furs" which its counsel admits was improper; and in the few cases in which customers of defendant have inquired of its representatives or employees at defendant's store whether defendant was connected with I. J. Fox, Inc., or any of its affiliates, such customers have been told that defendant was not so connected.

Upon the foregoing facts, the conclusion seems inescapable that defendant's use of the words "Fox Fur" in its corporate name, and the use of the same and similar terms in its advertising, are likely to mislead purchasers or prospective purchasers of furs into supposing that the furs of the defendant are, in fact, furs advertised and dealt in by the plaintiff.

It is true that the testimony in the present case is scant as to any person having been actually so misled. However, such proof is not a condition precedent to the right to injunctive relief in a case of this kind. Such relief may be granted on prospective grounds as well as upon what has already happened.

We so conclude because even though the evidence is circumstantial except for the testimony of three witnesses whose statements are admittedly of doubtful credence because of animosity, arising out of family and business disputes, the persons who organized and own the defendant company must have been motivated in adopting the word "Fox" as part of the corporate name, by the knowledge of the long established and very successful business of the plaintiff, and, therefore, must have intended to benefit by the inclusion of this word in their corporate name, at the expense of I. J. Fox, Inc.

This conclusion is amply supported by the facts. Defendant's contention is a specious one, refuted by the facts and every reasonable inference to be drawn therefrom. No one having the name Fox has ever been connected with the defendant company. It is not reasonable to accept the theory that the name was adopted because of an actual or contemplated specialization in the sale of fox furs, first, because the evidence does not indicate there has ever really been any such specialization; second, because many successful dealers,—there are many retail furriers in Baltimore—are shown to have little difficulty in selling fox furs without using the word "fox" in their corporate or trade name; third, two of the very persons who own and organized the defendant company claimed to have specialized for years in fox furs in New York and yet traded under their own names and did not use the word "Fox" or "Fox Fur" as part of their trade name; and fourth, although the business of defendant itself is that of a relatively small retail fur store, with exclusive Baltimore patrons, it is in reality one of a number of chain stores, all with the same name, organized and operated to sell furs of various kinds, as they happen to be in vogue, in various cities by the same persons, or affiliates of the same persons, who organized and operate the Baltimore store. The first of these chain stores was established in Washington under the name "Fox Fur Co., Inc.". Then, this name was adopted for the Baltimore company; another company was organized under the same name in Wilmington, and a fourth in Paterson, New Jersey. Last, but not least, in some of its advertising the defendant actually used the phrase "Fox's Fine Furs", which obviously had no refer-

ence to fox, the animal, and leaves us with no other inference that can reasonably be made than that defendant was pirating the name and good will of plaintiff.

■ In order to constitute unfair competition with respect to a trade name, two elements must be present: the name must have acquired a secondary meaning or significance that identifies the plaintiff; and the defendant must have unfairly used it or a simulation of it as respects the plaintiff, i. e. must have used it in such a way as will create, or tend to create in the mind of the public, a belief that the name so used is that of the plaintiff or an affiliate of the plaintiff. If these elements exist, then defendant's motive, except in so far as it may affect the extent of allowable damages, is immaterial. See McGraw-Hill Pub. Co. v. American Aviation Associates, 73 App.D.C. 131, 117 F.2d 293; S. S. Kresge Co. v. Winget Kickernick Co., 8 Cir., 96 F.2d 978; Brooks v. Great Atlantic & Pacific Tea Co., 9 Cir., 92 F.2d 794; R. H. Macy & Co. v. Macy Drug Store, 3 Cir., 84 F.2d 387.

■ Relief may be had even though plaintiff's and defendant's goods may be so completely different as to be in no sense competitive; and whether or not competitive in character, actually doing business by the plaintiff in the territory where relief is sought is not a prerequisite to the granting of relief. See Phillips v. The Governor & Co., etc., 9 Cir., 79 F.2d 971; The Governor & Co., etc., v. Hudson Bay Fur Co., D.C., 33 F.2d 801; Buckspan v. Hudson's Bay Co., 5 Cir., 22 F.2d 721; Finchley, Inc., v. Finchly Co., D.C., 40 F. 2d 736.

Even if a person or persons named "Fox" were identified with the defendant's business, such surname could still not be used as part of the defendant's trade name without at least prefixing some distinguishing initials or adding some explanatory statement. See Herring, etc., Safe Co. v. Halls Safe Co., 208 U.S. 554, 28 S.Ct. 350, 52 L.Ed. 616; Vick Medicine Co. v. Vick Chemical Co., 5 Cir., 11 F.2d 33; Neubert v. Neubert, 163 Md. 172, 161 A. 16.

The fact that the word "Fox" is both a family name and the name of those wily animals included in the genus Vulpes does not justify a relaxing of the legal principles aimed at preventing unfair competition. Let us suppose that a Mr. Bird had a long established business of selling bird seed under the name of the Bird Seed Company, and that subsequently another Mr. Bird, with different first names, sets up a competing bird seed business under the same name,—Bird Seed Company, without more. Can it reasonably be maintained that the second Mr. Bird was not engaging in unfair practices as respects the first Mr. Bird merely because (1) their two surnames are the same, and (2) no one has the exclusive right to the use of a generic term for a common product?

■ Contending that since no one has the exclusive right to the use of a generic term as a trade name, relying upon such cases as Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 and Goodyear's India Rubber Glove Co. v. Goodyear Rubber Co., 128 U.S. 598, 9 S. Ct. 166, 32 L.Ed. 535, defendant stresses the fact that this rule has been applied even in cases where, unlike the present one, there is active competition in the same territory, citing such cases as Dixi-Cola Laboratories v. Coca-Cola Co., 4 Cir., 117 F. 2d 352; S. R. Feil v. John E. Robbins Co., 7 Cir., 220 F. 650; John Morrell & Co. v. Doyle, 7 Cir., 97 F.2d 232; Thomas Kerfoot & Co. v. Louis K. Liggett Co., 1 Cir., 67 F.2d 214. However, as such decisions indicate, there is a clear distinction between attempts to establish the right to exclusive use of the trade name of a product and that of the producer of a product, in a case such as the present one. Plaintiff here is not seeking to exclude defendant from the retail fox fur or general fur business. This, of course, it cannot do. What the plaintiff claims is that defendant should not be allowed to use the common noun "fox" in any way to suggest the proper name "Fox". We believe this claim is sound, and that the proof amply supports a finding that what defendant has been doing is well calculated to lead the public to believe that the word "Fox" as used in defendant's trade name and advertising indicates an affiliation with plaintiff. Also, defendant's addition to its advertisement of the clause, "This is a local corporation and business", is quite insufficient to obviate the misleading character of the use of the word "Fox", as embodied in defendant's corporate name and advertisements. Clearly, no immunity as respects the charge of unfair competition flows from the mere fact that defendant has been granted a cer-

tificate of incorporation bearing its present name. See The Peck Brothers & Co. v. Peck Bros. Co., 7 Cir., 113 F. 291, 62 L. R.A. 81.

At the close of the case, defendant's counsel offered, without conceding, however, that defendant does not have the legal right to use its present corporate name, to employ some name or initials immediately preceding the phrase "Fox Fur" in defendant's corporate title, thus changing its corporate name to some such name as "Bay Fox Fur Co.", "Bengus Fox Fur Co." or "Chesapeake Fox Fur Co." Plaintiff, however, has been unwilling to accept such proposal as a satisfactory solution of the present controversy, and has persisted in urging upon the Court that defendant be required to desist from hereafter using the word "Fox" in its corporate name or in its advertising, in any form whatsoever, no matter how qualified.

We believe that even though the conclusion is inescapable, as already explained, that defendant's adoption of its present trade name was deliberate and for the very purpose of capitalizing the good will of the plaintiff, nevertheless, a requirement that defendant change its name by some such modification as it has offered to do will afford the plaintiff the full protection to which it is legally entitled in this respect. We do not feel required to specify the exact form that the modified trade name shall take. Suffice it to say that defendant must use as a prefix to its present trade name, not some initials, but some individual or descriptive name which will remove all possible ground for believing that the phrase "Fox Fur" or "Fox Furs" whenever hereafter used in defendant's trade name or advertisements, inidcates or suggests some connection with the trade name and business of the plaintiff.

The present case is strikingly similar in important respects to that of R. H. Macy & Co. v. Macy's Drug Store, 3 Cir., 84 F. 2d 387, a decision of the Circuit Court of Appeals for the Third Circuit. There, R. H. Macy & Co., Inc., the well-known New York retail department store, was held to have acquired a secondary meaning so as to entitle it to protection against use of the word "Macy's" by a drug store in the City of Philadelphia whose owners, neither of whom was named Macy, had, nevertheless, adopted the name "Macy's Drug Store" and registered it under the Pennsyl-vania Fictitious Names Act. It is true in that case the parties litigant were not dealing exclusively in one specific commodity, as are the litigants in the present case. It is also true that, unlike the plaintiff in the present case, Macy's actually did considerable business in the same city with the defendant. However, these differences cannot, as we have seen, be considered controlling, and the two situations are very similar with respect to the adoption and the reason for the adoption by the defendant in each case, of the plaintiff's name. Therefore, what the Court said as follows in the Macy case seems peculiarly applicable to the present case (84 F.2d 387, at page 388):

"In its own extensive business the plaintiff company conducts a retail department store in New York City, and does a large volume of interstate business in the United States and very considerable business in the city of Philadelphia. One of its departments deals in drugs, medicines, cosmetics, toilet preparations, cigars, cigarettes, and other articles commonly sold in drug stores. The plaintiff is commonly referred to as 'Macy's', and its drug department is operated under the name Macy's Drug Department.

"The defendants, whose names are Bernett and Rosenfeld, operate a drug store in the city of Philadelphia, and have registered the name 'Macy's Drug Store' under the Fictitious Names Act (54 P.S. § 21 et seq.). They also use signs on their store stating it is Macy's Drug Store. No one connected with the defendants' store is named Macy. The defendants' explanation is that they innocently used the last two syllables of the word 'pharmacy' in their slogan, 'The last word in pharmacy' as the basis for their use of the name 'Macy.' This contention does not deceive this court as to what their real purpose is; namely, to appropriate the good will and trade of the Macy Company.

"The District Court refused to find that the defendants were guilty of unfair competition and, therefore, denied the injunction. We think, however, that the word 'Macy's' had acquired a secondary meaning and referred to the plaintiff's business; that its application to the defendants' business was misleading; that its use was intended to, and had a tendency to, mislead and deceive the public into the belief that the defendants' business was connected with that of the plaintiff. Indeed, the entire

atmosphere surrounding the acquisition of the name 'Macy's' by the defendants justifies a conclusion that there was a palpable attempt to make use of the plaintiff's reputation and good will, acquired through many years of advertising, and appropriate it to the benefit of the defendants and deceive the public."

Finally, it should be noted we do not consider the recent case of Little Tavern Shops, Inc., v. Davis, 4 Cir., 116 F.2d 903, must be construed as authority for requiring defendant to make a greater change in its name and form of advertising than we require it to make. In that case, there was evidence that the plaintiff corporation, which had secured registration of "Little Tavern Shops" as a trade mark for sandwiches, had used its corporate name "Little Tavern Shops, Inc." for a number of years in conjunction with operating eating shops in Baltimore; that plaintiff operated thirteen similar shops there, and that its customers had been led to believe that the food and liquor store operated by defendant in Baltimore under the name of "Hubbard's Little Tavern Liquors", with emphasis on the words "Little Tavern", was one of plaintiff's stores. The Circuit Court of Appeals for this Circuit, reversing this Court, held, on such evidence, that plaintiff was entitled to an injunction restraining defendant from using the words "Little Tavern".

In the case just referred to, the term "Little Tavern Shops" was a descriptive term used to designate places of a distinctive kind of architecture and not the product there sold. Further, the matter of signs used by the respective parties figured prominently in the litigation. While the defendant had added the word "Hubbard's" to the term "Little Tavern" on its sign, it only illuminated the words "Little Tavern" at night, and not the word "Hubbard's". Also, there were other features tending to distinguish that case from the present one. But suffice it to repeat that, as the Court there found, the plaintiff's corporate name was descriptive of the kind of places in which the plaintiff's business had long been and was being conducted, as opposed to a corporate name which, as in the present case, is descriptive not of the kind of place, but of a product sold.

To conclude, when, as here, the product sold is commonly described by a generic term which happens to be compris-

ed, in part, of a noun used as an adjective which is the same as plaintiff's surname, the principles of law aimed at preventing unfair competition in trade names are, we think, complied with if there be added, as a prefix to such noun as part of the corporate or trade name, some descriptive word or words which will clearly indicate that it is the thing, namely, the fur of the fox, and not some person or persons or other company identified with the business having the name "Fox" that is referred to; and if, as respects defendant's advertising or sales "talk", in whatever medium, defendant shall never refer to its merchandise as "Fox's furs", "Fox's fine furs", or in any other way that will convey or tend to convey the impression that it is the dealer's or seller's name or trade name, and not merely the kind of animal from which the fur comes that is referred to, but shall use only such terms as "fox fur", "fox furs", or "fur of the fox".

A decree will be signed in accordance with this opinion.