HOME OF THE WEEK, INC., Plaintiff,

v.

ASSOCIATED PRESS, INC., Defendant.

Civ. A. No. 1962.

United States District Court
D. Rhode Island.
Sept. 28, 1959.

2. Bouv. Law Dict., Rawle's Third Revision, p. 1111; Den ex dem. Smith v. Young, 7 Halst. 300, 12 N.J.L. 300.

Edward V. Healey, Jr., Aram A. Arabian, Providence, R. I., for plaintiff.

William H. Edwards, of Edwards & Angell, Providence, R. I., for defendant.

DAY, District Judge.

This is an action for unfair competition originally brought in the Superior Court of the State of Rhode Island and subsequently removed to this Court by the defendant. Jurisdiction of this Court is based upon diversity of citizenship and the existence of a controversy in the requisite amount. 28 U.S.C.A. § 1332.

In its complaint, filed in this Court after the entry of an order to replead subsequent to the removal of this action as aforesaid, the plaintiff alleges that it was incorporated under the laws of the State of Rhode Island on May 5, 1955; that on May 19, 1955 it purchased substantially all of the assets of Architects' Cooperative Plan Service, Inc. (hereinafter called "A.C.P.S."), a Rhode Island corporation; that it and its predecessor, A.C.P.S., have spent large sums of money and exerted considerable effort to make the public aware of the name "Home of the Week"; that substantial good-will has been built up thereby; that subsequent to its acquisition of the assets of A.C.P.S., the defendant advertised its intention of providing a similar service un-

der the name "The House of the Week"; that the defendant did thereafter institute such a service under said name; that the defendant's service "incorporated all of the fundamental features and format" which the plaintiff had theretofore used; that said features and format, and the name "The House of the Week" are so closely similar to the features, format and name theretofore employed by the plaintiff as to mislead prospective customers into thinking that the defendant is in some way connected with the plaintiff; that the defendant has solicited several of the customers previously serviced by the plaintiff and/or by A.C.P.S.; that the defendant fraudulently intended to cause actual or probable deception thereby, and has done so; and that the actions of the defendant have been without the consent of the plaintiff or of A.C.P.S., and over the written protests of the plaintiff. The complaint concludes with averments of the damages which have been sustained by the plaintiff, and an averment that the plaintiff has suffered irreparable injury and is faced with the threat of further irreparable injury as a result of the defendant's actions. By way of relief, the plaintiff seeks a permanent injunction and an award of damages.

In its answer the defendant admits that it is a membership corporation organized under the laws of the State of New York; that it furnishes news features and other services to its members in the State of Rhode Island and elsewhere; and that it instituted a plan service called "The House of the Week" in October, 1955. The defendant further admits the receipt of protests from the plaintiff from and after September 29, 1955, but denies that it has been guilty of any unfair competition as claimed by the plaintiff.

The evidence adduced at the trial establishes the following facts. For some years prior to May, 1955, A.C.P.S. operated a newspaper house plan service, so-called, in competition with several similar services. Its service consisted of supplying weekly to its subscriber newspapers photographs and interior plans of a particular house, together with an article describing in detail the principal features thereof; each of the houses included in its service was designated by a name, such as "The Alcan", "The Bowman", and so forth. The pictorial and editorial matter furnished by A.C.P.S. would then be published in the subscriber newspapers, which paid a weekly fee to A.C.P.S. for its service. Readers of the subscribing newspapers were invited to purchase blueprints of the house described, and were advised that information as to their cost could be obtained from the newspapers; all inquiries thus made were referred to A.C.P.S., which then answered them, giving the reader information as to the cost of such blueprints. Upon the sale of the blueprints, the subscriber newspaper was paid a commission of 10% of their selling price. The price for the first set, without specifications, was $12.75. A.C.P.S. had no definite contracts with its subscriber newspapers, their continuation of the use of its service being terminable at their respective options.

The house plan service so initiated and operated by A.C.P.S. was conducted under the name of "Home of the Week". Some time prior to May, 1955, the president of A.C.P.S. died; and early in May, 1955 the plaintiff was incorporated under the laws of the State of Rhode Island for the express purpose of purchasing the assets of A.C.P.S. On May 19, 1955 the plaintiff purchased from A.C.P.S. the bulk of its assets, including "all right, title and interest in and to the use and emoluments of the trade name 'Home of the Week Plan Service' ", and its goodwill.

The plaintiff thereafter began to conduct the business in substantially the same manner as it was carried on by A.C.P.S., and has continued to do so up to the present time.

In August, 1955, the defendant announced its intention to institute a newspaper house plan service to be known as "The House of the Week". Member newspapers of the defendant were ad-

vised of the benefits of the service and urged to take advantage of it. The defendant's service consists of supplying its subscribers, for weekly insertion in their newspapers, with photographs and interior plans of a particular house and an article describing the desirable features of said house. The defendant also furnishes a coupon by which the reader can order a copy of a study plan of said house for the sum of thirty-five cents;[1] each subscriber newspaper is required to purchase at least twenty study plans of the particular house described at a cost of seventeen and one-half cents each.[2]

In the study plan, the reader is advised that blueprints of and detailed working drawings for the house described therein are obtainable from the particular architect whose name is set forth therein. Under its service, neither the defendant nor its subscriber newspapers have any further contact with the reader who has indicated interest in the study plan; and the subscribing newspapers do not in any way share in the proceeds, if any, from the sale of the blueprints.

After the public announcement by the defendant of its intention, as aforesaid, the plaintiff protested by letter to the defendant. Notwithstanding this protest, the defendant instituted its aforesaid service on October 2, 1955.

From the evidence it is clear that there is nothing distinctive about the plaintiff's format, i. e., the picture of the house, its interior design or the article describing said house. The plaintiff does not claim, nor is there any evidence, that the defendant's plans are copies of the plaintiff's, or that they unduly resemble them. The plaintiff does not claim, nor is there any evidence, that the defendant employs names for its houses that copy or resemble those applied by plaintiff to its houses. In fact, the defendant's houses are designated by numbers rather than by names. The evidence also establishes that neither the plaintiff nor its predecessor has ever had a trade-mark registered for the name "Home of the Week".

The plaintiff's claim of unfair competition on the part of the defendant depends entirely on whether or not the defendant's use of the title "The House of the Week" is, under the circumstances, wrongful; indeed, the plaintiff's president testified that the similarity of this title to that employed by the plaintiff is the plaintiff's "basic and only complaint".

Apart from the issue of damages, the two principle issues in this case may be summarized as follows: (1) have the efforts of the plaintiff and its predecessor created a secondary meaning for the phrase "Home of the Week" such that the public identifies said phrase with a house plan service originating with the plaintiff? and (2) if so, have the actions of the defendant in the institution and operation of its house plan service been such as to create the likelihood of confusion in the minds of the prospective purchasers of house plans? Since the phrase "Home of the Week" has not been registered as a trade-mark, the remedy of the plaintiff, if any, stems not from statute but from the common law of unfair competition. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Navy Club v. All-Navy Club, D.C.R.I.1949, 85 F. Supp. 679.

■■■ There is nothing arbitrary or fanciful about the phrase "Home of the Week". The first word of the phrase is merely descriptive of the subject matter with which the plaintiff's service is concerned, and the remainder of the phrase merely serves to impute some degree of excellence thereto. As was held in Burmel Handkerchief Corp. v. Cluett, Peabody & Co., 1942, 127 F.2d 318, at page 321, 29 CCPA 1024:

"We think that judicial notice can be taken of expressions of time, such as 'of the year', 'of the hour', 'of the month', 'of the century', 'of the era',

1. On June 1, 1959, the price of such a study plan to the reader was increased to fifty cents.

2. On June 1, 1959, the price of such a study plan to the subscriber newspapers was increased to twenty-five cents.

etc., as indicating that the persons or objects to which they are applied stand out pre-eminently above the class to which they belong by reason of some outstanding achievement or quality. That such expressions are laudatory and are intended to attract attention to persons or objects by reason of achievement or quality cannot be doubted. 'Man of the Hour' could be well applied to many leaders of world thought or action, yet none could say that such expression could be exclusively applied to any one of such leaders. 'Car of the Year' as applied to an automobile is intended to indicate that it possesses qualities which raise it above automobiles generally in material, quality, workmanship and style. No one could seriously think that that expression could not be used by the manufacturer of any automobile.

"In the final analysis such expressions as we are discussing with relation to objects of a trade are a 'puffing of wares' and are intended to call attention to the superiority of the advertised goods. Such expressions are a condensed form of describing in detail the outstanding character or quality of the objects to which they are applied. So with the expression 'Handkerchiefs of the Year'. It merely in condensed fashion describes handkerchiefs having every characteristic as to material, quality and style that the best handkerchiefs should possess.

"We think that the notation sought to be registered is descriptive of the character or quality of handkerchiefs. We are further of opinion that the notation inherently cannot function as a trade-mark. Such a common expression which can indicate nothing but high quality surely would not be indicative of origin to the purchasing public."

In this connection, see also Book-of-the-Month Club v. Childrens Book & Record of the Month Club, D.C.N.Y.1953, 112 F.Supp. 151. Said phrase is clearly descriptive and designed to call attention to the superior quality of the homes recommended in the plaintiff's · service. Compare William R. Warner & Co. v. Eli Lilly & Co., 1924, 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161; Standard Paint Co. v. Trinidad Asphalt Manufacturing Co., 1911, 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536; Elgin National Watch Co. v. Illinois Watch Case Co., 1901, 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Canal Co. v. Clark, 1871, 13 Wall. 311, 20 L.Ed. 581. My finding in this regard, however, is not determinative of the plaintiff's right to relief in this action, for it is well settled that even a descriptive phrase is entitled to the protection of the law if the prior appropriator thereof can show that a secondary meaning has attached to such descriptive phrase and that the activities of a later appropriator of said descriptive phrase have created a likelihood of confusion.[3] Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra; Navy Club v. All-Navy Club, supra; Cady v. Schultz, 1895, 19 R.I. 193, 32 A. 915, 29 L.R.A. 524. The plaintiff must establish the existence of these conditions by a fair preponderance of the credible evidence. Swank, Inc. v. Anson, Inc., D.C. R.I.1951, 104 F.Supp. 703, affirmed 1 Cir., 1952, 196 F.2d 330; Ellay Stores, Inc. v. Savitz, D.C.Pa.1939, 30 F.Supp. 462.

 The evidence presented at trial tended to show that A.C.P.S. had used the trade name "Home of the Week" in connection with its house plan service since sometime in 1948. At best, this use was intermittent until some years thereafter. The evidence clearly established that the plaintiff has used said trade name regularly since June, 1955. Under the circumstances, the plaintiff is allowed to rely upon the fruits of its predecessor's efforts as well as its own in attempt-

3. It is, however, true that "(E)quity gives a greater degree of protection to 'fanciful' trade names than it accords to names in common use". Stork Restaurant, Inc. v. Sahati, 9 Cir., 1948, 166 F.2d 348, at page 355. See also, Bulova Watch Co, v. Stolzberg, D.C.Mass.1947, 69 F.Supp. 543, 546.

ing to prove that said trade name has acquired a secondary meaning. See Speed Products Co. v. Tinnerman Products, Inc., 2 Cir., 1949, 179 F.2d 778; Stork Restaurant, Inc. v. Sahati, supra; Sterling Products Corp. v. Sterling Products, Inc., D.C.N.Y.1942, 45 F.Supp. 960.

The defendant introduced a great many documents which clearly demonstrated that the phrase "Home of the Week", and phrases closely analogous thereto, had been used in connection with house plan services and in related fields over the period between 1931 and 1958. The vast majority of these uses were by persons or firms not in any way connected with the parties to this litigation. The evidence also showed that plaintiff's subscriber newspapers had the right to alter the titles of articles furnished to them by the plaintiff, or to edit such articles in any way (including the deletion of the phrase "Home of the Week" therefrom), and that this power was in fact exercised on occasions.

The true test of whether the phrase "Home of the Week" has acquired a secondary meaning is whether the purchasing public associated that phrase with a single source, regardless of whether or not it knew that source by name. Hawley Products Co. v. United States Trunk Co., 1 Cir., 1958, 259 F.2d 69; General Time Instruments Corp. v. United States Time Corp., 2 Cir., 1948, 165 F.2d 853; cf. Merlino v. Schmetz, 1941, 66 R.I. 425, 20 A.2d 266. See also 3 Restatement, Torts § 741. Considering the evidence as a whole, and the reasonable inferences to be drawn from it, I do not believe that said phrase is generally regarded by the purchasing public as identifying the plaintiff's house plan service, and I must therefore conclude that the plaintiff has failed to establish the existence of a secondary meaning for said phrase sufficient to accord it a proprietary right thereto.

Moreover, if a secondary meaning had attached to said phrase, it would also be incumbent upon the plaintiff to demonstrate by the required degree of proof that it was likely that prospective purchasers of the plaintiff's services or of its house plans would regard the defendant's services and plans as originating with the plaintiff. Hawley Products Co. v. United States Trunk Co., supra; Navy Club v. All-Navy Club, supra. The test to be applied is: would the ordinary purchaser, exercising the care of a reasonably prudent person, be deceived under ordinary conditions? Swank, Inc. v. Anson, Inc., supra; Fawcett Publications, Inc. v. Popular Mechanics Co., 3 Cir., 1935, 80 F.2d 194; Yellow Cab Co. of Rhode Island v. Anastasi, 1924, 46 R.I. 49, 124 A. 735. In the instant case, the purchasing public, so-called, consists of two classes, viz.: (1) the newspapers (which are solicited by the supplier of the house plan service) and (2) the general public (which purchases study plans or blueprints after viewing the photographs and designs and reading the article appearing in the newspapers). These classes must be treated as distinct markets for the purposes of this case. Cf. American Luggage Works, Inc. v. United States Trunk Co., D.C.Mass.1957, 158 F. Supp. 50, affirmed sub nom. Hawley Products Co. v. United States Trunk Co., supra.

As to the newspapers, it is obvious that no substantial likelihood of confusion exists. The defendant offers its service only to its members and to members of the Canadian Press. Under the circumstances, it may be concluded that those newspapers would correctly identify the defendant as the source of "The House of the Week" service. It must be remembered that newspaper editors are professionals, working daily in a specialized field; and as such are not readily susceptible to the sort of confusion which the plaintiff must show to succeed in this litigation. Compare McGraw-Hill Pub. Co. v. American Aviation Associates, Inc., 1940, 73 App.D.C. 131, 117 F.2d 293; American Luggage Works, Inc. v. United States Trunk Co., supra; Eastern Const. Co. v. Eastern Engineering Corp., 1927, 246 N.Y. 459, 159 N.E. 397. See also, Nims, Unfair Competition and

Trademarks (3rd ed. 1929) § 324. In view of "the experienced and discriminating character of the clientele"[4] here involved, and the total absence of any evidence of past confusion on the part of subscribing newspapers, it is abundantly clear that no appreciable likelihood of confusion is to result in respect to this segment of the purchasing public from the defendant's use of its designated title.

As to the general public, there is no evidence whatever of any palming off by the defendant of its service as being that of the plaintiff. And the only evidence of possible confusion presented by the plaintiff was that on successive days in September, 1957, two coupons which had been printed in conjunction with the defendant's service were apparently filled out by newspaper readers and sent, with the requisite payment, to one of the plaintiff's subscriber newspapers, which in turn forwarded them to the plaintiff. There was no evidence of any other similar incidents between the time when the defendant instituted its service and the trial of this action. The law of unfair competition requires that there be more than a possibility of an occasional misunderstanding. "Probable confusion cannot be shown by pointing out that at some place, at some time, someone made a false identification". McGraw-Hill Pub. Co. v. American Aviation Associates, Inc., supra, 117 F.2d at page 295. See also North American Airlines, Inc. v. Civil Aeronautics Board, 1955, 97 U.S. App.D.C. 85, 228 F.2d 432; Eastern Wine Corp. v. Winslow-Warren, Ltd., 2 Cir., 1943, 137 F.2d 955, certiorari denied 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452; Lawyers Title Ins. Co. v. Lawyers Title Ins. Corp., supra. In my opinion the plaintiff has failed to establish that there has been any confusion between the services furnished by the parties hereto, or that there is any probability of such confusion occurring in the future.

4. Lawyers Title Ins. Co. v. Lawyers Title Ins. Corp., 1939, 71 App.D.C. 120,

I find and conclude that the defendant has not competed unfairly and is not now competing unfairly with the plaintiff. Accordingly, judgment shall be entered in favor of the defendant.

109 F.2d 35, 45, certiorari denied 1940, 309 U.S. 684, 60 S.Ct. 806, 84 L.Ed. 1028.